**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DOREEN MILES-WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-05-1155-HE |
| | ) | |
| ARVEST BANK GROUP, INC. and | ) | |
| ARVEST BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is the motion for summary judgment filed by defendants Arvest Bank

Group, Inc. and Arvest Bank.  Plaintiff has responded in opposition to the motion. Upon

review, the court concludes defendants' motion should be granted.

Plaintiff filed this action claiming her former employer demoted her and

constructively terminated her because of her race and age and retaliated against her when she

complained of such discrimination.  Her claims arise under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 1981 and the Age Discrimination in Employment Act of 1967

("ADEA").

Defendants have moved for summary judgment arguing that plaintiff has failed to

establish a prima facie case of discrimination or retaliation or establish pretext with respect

to the employment actions taken against her.

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed.R.Civ.P. 56(c).  When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Martin, 190 F.3d at 1129.  "In cases such as this, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (internal quotations omitted).

## FACTS[1]

Defendants own several branch banks in Oklahoma City and the surrounding area. In January of 1999, plaintiff, a forty-six (46) year old African-American, began working at the defendants' Lincoln Boulevard branch in Oklahoma City as a teller.  Plaintiff worked as a teller for a few months and was then promoted to a "deposit counselor."  In January of 2000, plaintiff was promoted to assistant manager of the branch.  Linda Sanders, a Caucasian, who had worked at the Lincoln branch for more than twenty years, was the branch manager.  In October of 2001, plaintiff applied for and was promoted to the position

---

[1]*Various factual disputes exist in this case.  Where factual disputes exist, they have been resolved in plaintiff's favor so long as some evidentiary support exists in the record.*

of branch manager of the defendants' Del City branch where "upper management"

maintained their offices.  Susan Kinzie, a Caucasian and defendants' regional branch

manager, interviewed and hired plaintiff for the position.  On the day plaintiff reported to the

Del City branch, she met Kelly Brander, defendants' sales manager and Ms. Kinzie's

supervisor.  Plaintiff alleges that when she was introduced to Mr. Brander as the new branch

manager, he refused to shake her hand and stated "we'll see about this."  Pl's. Aff., ¶9.[2]

Later that same day, plaintiff was informed by Ms. Kinzie that she had been reassigned to

the Lincoln branch as manager with the same pay and responsibilities.  Ms. Sanders was then

reassigned to the Del City branch.  Defendants claim this decision was based on the levels

of experience of both plaintiff and Ms. Sanders and the size and makeup of the branches.

Ms. Sanders did not formally train plaintiff in her duties as manager before leaving to assume

her position at the Del City branch.

During her time as manager, plaintiff's branch did not operate efficiently or

cohesively.[3]  In short,[4] several breaches of procedure and policy occurred including, but not

limited to, money and other items left unsecured, problems with staffing and scheduling

during opening and closing and peak hours, inadequate training of and communication with

---

[2]*Defendants' motion to strike plaintiff's affidavit [Doc. #28] is **DENIED**.  In considering the affidavit, the court has disregarded any statements which are conclusory, based solely on opinion or conjecture, or which are otherwise inadmissible in evidence.*

[3]*Plaintiff admits that, as manager, she was responsible for the operations of the branch.*

[4]*Defendants' submissions establish a myriad of problems which occurred at plaintiff's branch after she took over as manager.  Those problems, which are not disputed by plaintiff, are well documented in defendants' exhibits 7-25.*

staff on bank policies and procedures, inadequate checks and balances on employees' time and leave records, and customer complaints.  Plaintiff claims these problems were due to a lack of adequate support and training and her inability to discipline her subordinates.[5]

On February 11, 2002, after several breaches of procedure were documented at plaintiff's branch,[6] Ms. Kinzie and Taura Woodward, an assistant manager from another branch, went to assist plaintiff in organizing the operations of the branch and training plaintiff and her staff on procedural issues.  Def's. Ex. 15.  Plaintiff was to report directly to Ms. Woodward during this assistance period.  Id.

On March 8, 2002, plaintiff received a negative evaluation from Ms. Kinzie wherein Ms. Kinzie commented that plaintiff was unable to independently manage a branch.  On that same date, plaintiff received a "Disciplinary Notice: Final Job Warning" which placed plaintiff on a sixty (60) day "performance improvement period."  The warning outlined expectations to be met in the first thirty (30) days of the period and warned of demotion, termination or voluntary resignation for failing to take corrective action.  Plaintiff signed the evaluation and the disciplinary notice without comment.

On April 1, 2002, plaintiff filed a charge of discrimination with the Oklahoma Human

---

[5]*Plaintiff claims she was prevented from disciplining her subordinates and was disciplined herself when she did so.  Other than her own conclusory statement, plaintiff produces no evidence in support of this allegation.*

[6]*Plaintiff claims that none of the "alleged deficiencies" at her branch were her responsibility.  Pl's. Resp., p. 6.  Instead, she states the problems were the "responsibility" of her teller supervisor and assistant branch manager both of whom plaintiff perceived as insubordinate. Pl's. Resp., p. 5.*

Rights Commission.  On April 10, 2002, Ms. Kinzie and Mr. Bradley Krieger, Chairman and

CEO, personally met with plaintiff and requested that she resign "because of what was going

on."  Pl's. Aff., ¶25.  Plaintiff agreed to resign and signed a pre-drafted resignation letter

provided by Ms. Kinzie and Mr. Krieger.  If plaintiff had not resigned she would have been

terminated by Mr. Krieger on that date.  Krieger dep., p. 12.  Plaintiff's position was later

filled by an African-American woman.

## **DISCUSSION**

Demotion

Plaintiff claims that her transfer from the Del City branch to the Lincoln branch was

a demotion motivated by her race and age.[7]  In order to survive summary judgment on these

claims, "plaintiff must show (1) that [s]he was within a protected group, (2) adversely

affected by defendant[s]' employment decision, (3) qualified for the position at issue, and (4)

that the job from which [s]he was demoted was not eliminated."  Jones v. Denver Post Corp.,

203 F.3d 748, 753 (10th Cir. 2000) (internal citations omitted).  Defendants argue that

plaintiff cannot establish she was actually demoted or that she was qualified for the position

at issue.

It is apparent from the record that at the time she was transferred to the Lincoln

branch, Ms. Kinzie viewed plaintiff as qualified for the position of manager as plaintiff had

---

[7]*Plaintiff alternatively refers to the actions surrounding her transfer to the Lincoln branch as a failure to promote and a demotion.  As referenced above, the record indicates that plaintiff was promoted to manager at the Del City branch and then transferred to the Lincoln branch as manager. Thus, the court analyzes this claim as an alleged demotion.*

just been promoted to that position.  As a result, defendants' argument in this regard is rejected.  However, with respect to the whether the transfer constituted a demotion, the court concludes plaintiff has not met her burden.

Plaintiff perceived her transfer as a demotion because "upper management" maintained their offices at the Del City branch.  However, "a reassignment is not a demotion unless the employee can show that he receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than h[er] previous assignment." James v. Sears, Roebuck and Co., Inc., 21 F.3d 989, 993 (10th Cir. 1994) (internal quotations omitted).  Here, plaintiff's reassignment did not involve a loss of title or a cut in pay, responsibilities or status.  As such, her transfer cannot be objectively viewed as equivalent to a demotion.[8] Accordingly, defendants' motion for summary judgment on plaintiff's demotion claims is **GRANTED**.

Constructive Discharge

Plaintiff alleges she was constructively discharged from her employment because of her race and age.  Because no direct evidence of discrimination is present in this case, the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to plaintiff's race and age claims.[9]  Under this analysis, plaintiff must first

---

[8]*What constitutes an adverse employment action is broader in a retaliation context.  See, e.g., Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006).  Here, however, the focus is on a claimed substantive discrimination offense rather than retaliation.*

[9]*Contrary to plaintiff's assertion, Mr. Brander's "we'll see about this" statement does not constitute direct evidence of discrimination.  See, e.g., E.E.O.C. v. Wiltel, Inc., 81 F.3d 1508, 1514*
*(continued...)*

present evidence to support a prima facie case of discrimination.  English v. Colo. Dept. of

Corrs., 248 F.3d 1002, 1008 (10th Cir. 2001).  If a prima facie case is demonstrated, the

burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its

actions.  Id.  The burden then shifts back to the plaintiff to show that the proffered reason is

merely a pretext for discrimination.  Id.

In order to prove her prima facie case of discriminatory discharge based on race or

age, plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was

qualified for the position at issue and performing her job satisfactorily;[10] (3) she was

constructively discharged; and (4) the position was not eliminated after her discharge.  See,

e.g., Exum v. U.S. Olympic Committee, 389 F.3d 1130, 1134 (10th Cir. 2004) ("As a general

matter in a failure to hire, failure to promote or a discharge case, a prima facie case of

employment discrimination consists of a showing that (1) the plaintiff belongs to some

protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the

plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less

favorably than others (e.g., the position at issue remained open after the adverse employment

action.)").  See also Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999)  ("One way

---

[9](...continued)
(10th Cir.1996) ("statements which are merely expressions of personal opinion or bias do not
constitute direct evidence of discrimination . . . [b]ecause such statements require the trier of fact
to infer that discrimination was a motivating cause of an employment decision").

[10]See, e.g., Mattera v. Gambro, Inc., 94 Fed. Appx. 725, 728 (10th Cir. Apr. 5, 2004)
(unpublished disposition cited for persuasive value only pursuant to 10th Cir. R. 36.3(B)) (noting
that this element of the prima facie case involves a showing of satisfactory performance).

a plaintiff may establish a prima facie case of wrongful termination is by showing that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge."). Defendants allege plaintiff cannot establish that she was performing her job satisfactorily at the time she was terminated or that she was constructively discharged.[11]

Although defendants point to plaintiff's work record as evidence of her unsatisfactory performance, defendants' subjective reasons for terminating plaintiff are more properly "considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination." Mattera, 94 Fed. Appx. at 728 (internal quotations omitted). The fact that plaintiff has testified that her work was satisfactory is sufficient to establish the second element of her prima facie case. See Mattera, 94 Fed. Appx. at 728 ("We have long held that even in the face of alleged work rules violations a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer . . . .") (citing MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)).

With respect to plaintiff's assertion that she was constructively discharged, an employee can prove a constructive discharge by showing that she was "faced with a choice

---

[11]With respect to plaintiff's race claim, defendant also asserts plaintiff cannot establish that her position was filled with a non-minority. While true, this does not appear to be an element of plaintiff's prima facie case. See, e.g., Perry, 199 F.3d at 1135 ("Contrary to arguments advanced by Defendants, the Supreme Court has not adopted a test requiring a plaintiff to prove that his replacement does not share his protected attribute.").

between resigning or being fired." <u>Burks v. Oklahoma Pub. Co.</u>, 81 F.3d 975, 978 (10th Cir. 1996). <u>See</u> <u>Spulak v. K Mart Corp.</u>, 894 F.2d 1150, 1154 (10th Cir. 1990) (finding sufficient evidence of constructive discharge where plaintiff was essentially forced to take early retirement or be fired). In this case, the facts, when viewed in a light most favorable to plaintiff, establish that if plaintiff had not agreed to sign the pre-drafted resignation letter provided to her, she would have been immediately terminated. As a result, plaintiff has met her burden as to this element of her prima facie case.

Because plaintiff has established a prima facie case, the burden shifts to the defendants to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for constructively discharging plaintiff. <u>English</u>, 248 F.3d at 1008. Here, defendants state they based their discharge decision on plaintiff's documented history of poor management at the Lincoln branch. This assertion is adequate to rebut plaintiff's prima facie case. <u>Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1328 (10th Cir. 1999). As a result, the burden shifts back to plaintiff to demonstrate that the defendants' reason is pretextual. <u>English</u>, 248 F.3d at 1008.

Pretext may be shown by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting <u>Morgan v. Hilti</u>, 108 F.3d 1319, 1323 (10th Cir. 1997)). However, this showing must be made by reference to affidavits, deposition transcripts, or specific exhibits. <u>See</u> <u>Adler v.</u>

Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.1998).  Repeated, unsupported

assertions by plaintiff that a defendant's action were based on race or age are insufficient to

defeat summary judgment.  See L & M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d

1284, 1287 (10th Cir.2000) ("Unsupported conclusory allegations ... do not create a genuine

issue of fact.").

As evidence of pretext for her alleged discriminatory discharge, plaintiff points to her

lack of initial training, the lack of discipline administered to other branch managers and her

inability to discipline her subordinates for their alleged operational failures.[12]   When

assessing a contention of pretext, the court examines the facts as they appeared to the

decision-maker at the time the decision was made.  Selenke v. Med. Imaging of Colo., 248

F.3d 1249, 1261 (10th Cir.2001).  Plaintiff's perception of her own work performance is

irrelevant to the court's determination.  See Simms, 165 F.3d at 1329 (finding that an

employee's own opinions about his qualifications do not give rise to a material factual

dispute).  See also Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (court does

not sit as a super personnel department to second guess the decision of the employer).

Although plaintiff was not formally trained after her selection as manager, she had

acted as an assistant manager at the same branch for almost two years before her promotion.

---

[12]*Plaintiff also refers to the fact that she was the defendants' only African-American branch manager as evidence of pretext.  While apparently true, plaintiff does not adequately explain why the court should infer an inference of pretext from this fact.*

When a pattern of problems began emerging at plaintiff's branch,[13] assistance was provided to plaintiff and her staff. Plaintiff does not deny that numerous operational problems existed, but attempts to shift the blame for these deficiencies to her subordinate employees and her inability to discipline. However, there is no evidence that plaintiff was prevented by the defendants from disciplining her employees (other than her own conclusory statements) or training them in the proper procedures. As the operations of the branch were ultimately the responsibility of the plaintiff as manager, and in light of the undisputed evidence of extensive, ongoing managerial and operational problems at the branch, the court concludes plaintiff has not produced evidence sufficient to raise a material issue of fact on the issue of pretext. Accordingly, defendants' motion for summary judgment on plaintiff's discrimination claims is **GRANTED**.

Retaliation

Finally, plaintiff alleges the defendants constructively discharged her for complaining of race and age discrimination. In order to establish a prima facie case of retaliation, plaintiff must show that she engaged in protected activity, she suffered a subsequent adverse employment action by her employer, and there is a causal connection between her protected activity and the employer's action. Sanchez v. Denver Pub, Sch., 164 F.3d 527, 533 (10th Cir. 1998). Defendants allege plaintiff has failed to establish an adverse employment action

---

[13]*It is this ongoing pattern of problems, either not responded to by plaintiff or not timely responded to by her, which distinguishes the discipline plaintiff received from that of other branch managers.*

or a causal connection between her protected activity and their actions.  Defendants also assert plaintiff has failed to establish pretext.

As noted previously, plaintiff has made a prima facie showing that she was constructively discharged thus making the necessary showing as to an adverse employment action.  In addition, the court concludes plaintiff has offered sufficient evidence to make a prima facie showing of causation between her protected activity and her constructive discharge.  Plaintiff filed her charge of race and age discrimination on April 1, 2002.  On April 10, 2002, defendants requested plaintiff's resignation "because of what was going on." The temporal proximity of this event to her complaint of discrimination is sufficient to make a prima facie showing of causation.  See, e.g., Anderson, 181 F.3d at 1179 ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.") (internal citation omitted).  However, as noted above, plaintiff cannot establish pretext with respect to her constructive termination.  Her constructive termination occurred after the thirty (30) day period allotted for improvement of operations at the branch.  During this period, several ongoing operational deficiencies were noted and customers complained of their treatment at the branch by plaintiff's employees.  Def's. Exs. 19-25.  Plaintiff had been warned that a failure to correct these deficiencies would result in demotion, termination or voluntary resignation.  As with the constructive discharge claim, the court concludes plaintiff has not produced evidence sufficient to raise a material issue of fact as to pretext.  Accordingly, defendants' motion for summary judgment on plaintiff's retaliation claims is **GRANTED**.

## CONCLUSION

In accordance with the above findings of the court, summary judgment is **GRANTED**

in favor of the defendants and against plaintiff.

**IT IS SO ORDERED**.

Dated this 10th day of August, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE